UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ANTHONY GLENN ALEXANDER,** | 2:20-CV-11841-TGB-RSW |
| Plaintiff, | |
| vs. | **ORDER GRANTING MOTION TO DISMISS** |
| **CHRISTIE PALMER, ET AL.,** | |
| Defendants. | |

Anthony Glenn Alexander alleges Defendants violated his rights, specifically by obtaining a warrant for his arrest with documents he claims contained forged signatures. ECF No. 1. Defendants filed a Motion to Dismiss. ECF No. 7. For the reasons that follow, Defendants' motion is **GRANTED** and the case is **DISMISSED WITH PREJUDICE**.

## I. BACKGROUND

In October 1998, Officer Christie Palmer of the Michigan State Police ("MSP") entered a warrant for Plaintiff's arrest into the Law Enforcement Information Network. Plaintiff claims that the judge's signature on the warrant was a forgery. ¶¶ 11-12, ECF No. 1, PageID.3.

In May 2000, Plaintiff was arrested at his home in Minnesota by a state fugitive task force on the authority of the outstanding Michigan

1

warrant. The arresting sheriff's department sent a message to the Jackson County court that had issued the warrant indicating that Plaintiff was in their custody, and he was released on bond. *Id.* at ¶¶ 12-14, PageID.4.

Although the circumstances are not clear from the Complaint, it appears that Plaintiff was re-detained in Minnesota and subsequently transferred to Jackson County Jail in January 2001. He was arraigned on two felony counts of illegal sale and use of a financial transaction device. A count charging false pretenses was later added. He was found guilty on all counts after a jury trial in April 2001 and sentenced to serve nine to twenty years in May 2001. *Id.* at ¶¶ 17-23, PageID.4-5.

In 2003, then an inmate at Huron Valley Men's Facility, Mr. Alexander unsuccessfully appealed his conviction. Ex. A, ECF No. 7-2; *see also People v. Alexander*, No. 234744, 2003 WL 22113957, at *1 (Mich. Ct. App. Sept. 11, 2003). He was subsequently denied leave to appeal to the Michigan Supreme Court. ECF No. 7, PageID.37; *see also People v. Alexander*, 679 N.W.2d 73 (Mich. 2004). In 2003, he also filed a habeas petition challenging his extradition from Minnesota to Michigan, which was dismissed by the federal district court. ECF No. 5, *Alexander v. Romanowski*, No. 4:03-cv-40068 (J. Gadola). Neither his appeal nor his habeas petition mentioned forgery as a ground of error, as he does in this case.

In 2004, Plaintiff filed a § 1983 civil rights action against multiple defendants including Defendant Officer Palmer. In this lawsuit, Mr. Alexander for the first time alleged forgery in the documents related to his extradition and his arrest, including the complaint and warrant. Ex. B, ECF No. 7-3; *see also* Compl., ECF No. 3, *Alexander v. Jackson County et al.*, No. 2:04-cv-73332 (J. Cohn). It was screened and dismissed for failure to state a claim. Ex. C, ECF No. 7-4; *see also* Op. and Order, ECF No. 5, No. 2:04-cv-73332. He then filed a second habeas petition under § 2241. Ex. E, ECF No. 7-6; *see also* ECF No. 1, *Alexander v. Davis*, No. 2:05-cv-70732 (J. Cleland). This petition was eventually denied by the Sixth Circuit as not meeting the requirements for a successive petition. Ex. F, ECF No. 7-7; *see also* ECF No. 8, No. 2:05-cv-70732. Mr. Alexander was released from prison in 2009. ¶ 18, 21-24, ECF No. 1, PageID.5.

In August 2019, Mr. Alexander retained an expert to examine the documents in question. In a written affidavit, Plaintiff's expert concluded that based on his examination of the documents, he noted unusually exact similarities between the signature of the judge and the hand-written date on the complaint, and those same writings on the warrant[1] from October 1998. Specifically, the expert affidavit states that the judge's signature and date on the complaint is a "cut and paste copy" of the signature and date on the warrant, and that the judge "did not sign

---

[1] Both the complaint and warrant are found in the record at ECF No. 7-3, PageID.95-96.

[the complaint] and he may not have signed [the warrant.]" Fenoff Aff., ECF No. 1, PageID.13-15. Although the expert affidavit does not use the term "forgery," Plaintiff claims in his Complaint that the expert report is evidence that the signatures are "cut and paste forgeries." ¶¶ 25-28, ECF No. 1, PageID.6.

Plaintiff filed his Complaint on July 8, 2020, alleging various violations of his constitutional rights due to the alleged forgery in the warrant and complaint that led to his arrest. Defendants filed a Motion to Dismiss instead of an Answer. The Court held a hearing on the motion on March 24, 2021, and the issues are now fully briefed and ripe for review.

## II. STANDARD OF REVIEW

Defendants' motion is brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure and argues that Plaintiff fails to state a claim that can be recognized under the law.

Rule 12(b)(6) permits dismissal of a lawsuit or claim where the defendant establishes the plaintiff's "failure to state a claim upon which relief can be granted." *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Consideration of a Rule 12(b)(6) motion is confined to the pleadings (the documents submitted to the court by the plaintiff as a part of the complaint or as referenced in the complaint). *Id*. In evaluating the motion, courts "must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true and

4

determine whether the plaintiff undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

Though this standard is liberal, it requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of her requests for relief and argument that the case should move forward. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under *Ashcroft v. Iqbal*, the plaintiff must also plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff falls short if she pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678-79).

Put differently, the Court can allow the case to move forward at this stage only if the plaintiff alleges enough facts to indicate more than a "mere possibility" that the harm occurred.

### III. ANALYSIS

#### A. Claims against Christie Palmer

The Court will first consider any claims against the officer defendant Christie Palmer. Counts I and II of the Complaint bring claims

5

under 42 U.S.C. § 1983 for violations of Mr. Alexander's constitutional rights, as well as a state law claim for intentional infliction of emotional distress. ECF No. 1, PageID.6-9.

### i. Res judicata bars Plaintiff's claims

Defendants argue that any claims against Defendant Palmer should be dismissed on res judicata grounds. Under this legal doctrine, which is Latin for "a thing adjudicated," a plaintiff cannot bring a second lawsuit against the same party or parties, about the same set of events, and raise any claims that were raised or could have been raised in the first lawsuit. *Res judicata*, BLACK'S LAW DICTIONARY (11th ed. 2019). If a court has already heard a claim or had the chance to hear a claim once, it is generally not permitted to hear it again.

> The elements necessary to find res judicata are:
>
> (1) a final decision on the merits by a court of competent jurisdiction;
> (2) a subsequent action between the same parties or their "privies";
> (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and
> (4) an identity of the causes of action.

*Bittinger v. Tecumseh Prod. Co.*, 123 F.3d 877, 880 (6th Cir. 1997).

In comparing this case with Plaintiff's 2004 civil lawsuit, *Alexander v. Jackson County et al.*, No. 2:04-cv-73332 (J. Cohn), all four of these elements are present. First, Plaintiff's claims were dismissed under 28 U.S.C. § 1915(e)(2)(B) for failing to state a claim on which relief may be

6

granted. This is considered a final decision on the merits by a court of competent jurisdiction. *Taylor v. Reynolds*, 22 F. App'x 537, 539 (6th Cir. 2001). Second, this is a subsequent action between the same parties— Mr. Alexander as the Plaintiff, and Christie Palmer as the Defendant. As to the fourth element, an "identity of the causes of action" means that the two cases arise out of the same set of events or facts. Here, both cases concern the same events, the arrest and extradition that happened between 2000 and 2001.

The Court will more closely examine the third element, that the issue Mr. Alexander seeks to raise in this case was litigated (or should have been litigated) in the previous action. In this case, Plaintiff says he is challenging the "arrest warrant and complaint, and his subsequent detention under those charging documents." ECF No. 11, PageID.198. Specifically, he alleges based on his expert's affidavit that "the signatures of the Judge and the date on the criminal complaint and Forged Warrant from October 1998 were 'cut and paste' forgeries." Compl. at ¶ 27, ECF No. 1, PageID.6. In the 2004 case, he made broader claims that alleged forgery in a larger set of documents, but his statements did include the warrant and complaint. Specifically, he says in Paragraph 9 of the 2004 complaint: "Now look at the signatures of Judge Charles J. Falahee, and the dates, 10/16/98 on the complaint and warrant inside exhibit-B. It is clear that these are copies of copies, forgeries." Ex. B, ECF No. 7-3, PageID.78; *see also* ECF No. 3, No. 2:04-cv-73332, PageID.17. In both

7

cases, therefore, Mr. Alexander made the same claim about forged signatures on the same set of documents.

Additionally, both the 2004 case and the present case were brought under 42 U.S.C. § 1983. The complaint in the first case broadly referred to "constitutional rights, federal law, due process of law, equal protection of the law, deprivation of rights under color of law, conspiracy against civil rights" and more. Ex. B, ECF No. 7-3, PageID.80; *see also* ¶ 16, ECF No. 3, No. 2:04-cv-73332, PageID.19. Given that the court's order in 2004 found that the complaint failed to state any claim, the Court must reasonably conclude that Judge Cohn considered all potential constitutional claims pertaining to the allegations of forgery, and found none.

In short, Mr. Alexander previously filed a § 1983 action alleging violations of his constitutional rights due to a forgery of these two documents. He brings the same claim today, and the doctrine of res judicata prevents this Court from reevaluating a question that was already considered by a court and dismissed on the merits. Even if his 2004 lawsuit is interpreted as bringing slightly different claims than the claims in this lawsuit, he *could have* brought the claims in this lawsuit then.[2] The res judicata bar applies either way.

---

[2] The fact that Plaintiff lacked an expert's affidavit attesting to "cut and paste" signatures when he brought his case before Judge Cohn is immaterial because the allegation was clearly articulated in the prior complaint.

### ii. Plaintiff's claims would also be time-barred

Even if res judicata does not apply, Defendants argue that Plaintiff's claims are being brought too late. Plaintiff concedes that the relevant statute of limitations for these claims is Michigan's three-year statute of limitations for personal injury actions—therefore, there is a three-year window for bringing these claims from the moment they accrue, or from the moment the claim becomes valid. ECF No. 10, PageID.180. But he argues that he could not have brought this claim in a timely manner and that his statute of limitations should be tolled, or paused, due to the Defendants' allegedly fraudulent actions.

In cases where some kind of fraud delays a plaintiff from knowing they have a legal claim, the Sixth Circuit requires that the court "look to the event that should have alerted the typical lay person to protect his or her rights" to determine when the claim accrued and the relevant statute of limitations began to run. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003). To toll, or pause, a statute of limitations because of fraud, the plaintiff also has to show "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." *Evans v. Pearson Enterprises, Inc.*, 434 F.3d 839, 851 (6th Cir. 2006) (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975)).

Here, if the warrant and complaint were fraudulently obtained in 1998, Mr. Alexander's statute of limitations technically would have started running then, when those documents were first created. But of course, at that time there is no reason to believe that Plaintiff could have known of the alleged forgery. His statute of limitations clock would not start until some event that "should have alerted [him] . . . to protect [his] rights." While the Court cannot discern on this record precisely when Plaintiff was alerted by such an event, there can be no doubt that Mr. Alexander was aware of the grounds for his potential claim of forgery at least as early as 2004: he raised it in his lawsuit in front of Judge Cohn. At the very latest, therefore, his three-year window for bringing this claim expired in 2007.

At oral argument, Plaintiff stressed that he was not represented by counsel in 2004, that he was bringing the claim from a different position then because he was incarcerated, and that therefore the Court should disregard that lawsuit in determining when he truly became "aware" of the possible claim he had and the need to protect his rights. But Mr. Alexander's language in his 2004 complaint quite clearly articulates his legal claim regarding the forgery. Though the 2004 complaint focused more on the extradition documents, it plainly set forth specific facts about forgeries across the legal documents connected to his case—including in the warrant and complaint. There is no doubt that Mr. Alexander was aware of this claim at the time he filed the 2004 complaint. Because the

10

statute of limitations began to run in 2004, the legal window of time in which to bring this claim closed in 2007.

### iii. The "fraud on the court" exception does not apply

Plaintiff lastly argues that, despite the fact that res judicata and the expiration of the statute of limitations may bar the claims in this lawsuit, the Court should not apply either because there has been a "fraud on the court." To show that a previous judgment involved "fraud on the court" such that it should be overturned, a plaintiff must show that there was "(1) conduct, (2) on the part of an officer of the court, (3) directed to the 'judicial machinery' itself, (4) that was intentionally false or undertaken with either willful blindness to, or reckless disregard for, the truth; (5) that was either in the nature of a positive averment or a concealment under circumstances that gave rise to duty to disclose; and (6) that deceived the court." *Followell v. Mills*, 317 F. App'x 501, 506 (6th Cir. 2009) (citing *Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir.1993)). There is no statute of limitations on a claim if there is a finding of fraud on the court in the original proceeding.

However, the only examples of "fraud" Plaintiff points to are the allegedly "cut and paste forgeries" contained in the original complaint and warrant from 1998. But those allegedly fraudulent documents would have misled the Jackson County court, not this court when Judge Cohn heard Mr. Alexander's § 1983 action. Judge Cohn knew from the face of the complaint that Plaintiff was alleging they were forgeries—he was not

11

the victim of any fraud on the court. And he considered Plaintiff's forgery allegations and decided on the merits that the complaint was insufficient to allow that claim to move forward. Mr. Alexander does not allege any other "fraud on the court" during the proceedings before Judge Cohn in his original § 1983 action, or that any party or attorney conducted themselves in a way that was intentionally false or intended to mislead the court.

Plaintiff argued strongly at the hearing that the alleged forgery essentially amounts to a "taint" on all of his legal proceedings, including before Judge Cohn and before this Court, such that the "fraud on the court" continues to this day. He also indicated his belief that the "forgery" came about because the complaint and warrant were never presented to or authorized by a judge at all. Therefore, he argues, at the very least the Court should allow the claim to move forward so that he can conduct discovery to determine the extent and nature of the fraud at issue.

But the problem with this argument is that, to survive a motion to dismiss, a Plaintiff must allege enough facts to indicate to the Court that there is more than a "mere possibility" the harm occurred, even if that harm is a fraudulent "taint." The only evidence Plaintiff has to support his allegation of a forgery is his expert affidavit. But the affidavit does not establish or even opine that there was actually a false, forged signature or that a judge did not authorize the proceedings—it only indicates that one or both of the signatures were "copies." Whether a

12

judge did or did not approve the warrant and complaint is in some ways a separate inquiry, and Plaintiff alleges no facts in his Complaint that support such a version of events beyond the mere suggestion of a possibility.

Put differently, it would be highly irregular for a warrant to be fabricated out of whole cloth and never presented to a judge for authorization.[3] The use of copies or electronic signatures on such documents is a routine practice and does not on its own signal a strong possibility of a constitutional violation. Even this Court signs its orders electronically. It *would* be a fraudulent act, and likely would demonstrate fraud on the court, if the original warrant had never been approved by a judge. But Plaintiff cannot allege any facts to show this happened.[4]

---

[3] This is particularly true if the officer in question had probable cause for the warrant, and Plaintiff has never alleged that he was held without probable cause.

[4] In a letter to the Court, Mr. Alexander directs the Court's attention to two sets of documents from his 2004 case that he believes to be evidence of a forgery or other fraudulent conduct. ECF No. 17. While these arguments are not part of the Complaint in this case and had no bearing on the Court's decision, the referenced documents are part of the record, and the Court will briefly respond to Mr. Alexander in hopes of clarifying his concerns.

The first documents (ECF No. 17, PageID.223-24, *see also* ECF No. 7-3, PageID.77) indicate that although "Sgt. Kathy Boyer" is listed as the complaining witness on the complaint, MSP told Mr. Alexander in 2001 that "Kathy Boyer was not involved in your arrest or transfer from Minnesota" and that the arresting officer was Christie Palmer. He sees this as evidence of some fraudulent conduct. However, it is not at all

13

Plaintiff urges the Court to allow discovery so that he can verify this belief, but the Court must follow the pleading standards at the motion to dismiss stage, which do not allow a claim that is so thinly supported to stand. His claims against Officer Palmer are therefore dismissed.

### B. Claims against the Michigan State Police

Next, the Court will consider Plaintiff's claims against MSP. Count III of the Complaint brings claims under 42 U.S.C. § 1983 against MSP for violations of his constitutional rights. ECF No. 1, PageID.9-10.

A state enjoys immunity from suit—meaning it cannot be sued—under the Eleventh Amendment, and that immunity extends to state departments and agencies such as MSP. *Akella v. Michigan Dep't of State Police*, 67 F. Supp. 2d 716, 722 (E.D. Mich. 1999). There are only three

---

unusual for one officer to witness an initial complaint, and a different officer to take over at the arrest stage, and the record makes clear that is what happened here. It was technically correct for MSP to tell Mr. Alexander that Kathy Boyer was not involved in his arrest or transfer—she was only involved in the complaint.

The second documents (ECF No. 17, PageID.225-26, *see also* ECF No. 7-3, PageID.76) indicate that although the prosecutor on the complaint is listed as "Kathleen Rezmierski," when he inquired about her in 2004 the State Bar of Michigan told Mr. Alexander there was no "Kathleen Rezmierski" in its records. Mr. Alexander was left with the impression that "Kathleen Rezmierski" did not exist. But the State Bar Directory does list a "Mary Hanna-Rezmierski" (P51926), whose email is listed as krezmier@co.jackson.mi.us and whose address is listed as the Jackson County Prosecutor's Office. It seems evident to the Court that this is the same person, and that "Kathleen Rezmierski" was in fact a properly barred attorney who signed the complaint in this case.

14

ways to get around this prohibition against suing the state: "(a) when the State has consented to suit; (b) when the exception first set forth in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies; and (c) when Congress has properly abrogated a State's immunity." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008).

Here, Plaintiff has not alleged any facts that would support a finding, or even an argument, that any of the exceptions to the Eleventh Amendment immunity apply here. In fact, Plaintiff acknowledges that MSP has sovereign immunity. Resp., ECF No. 10, PageID.2020. Plaintiff contends that through discovery he may be able to show a pattern and practice of using these "cut and paste" forgeries within MSP and that it would be premature for the Court to grant a motion to dismiss at this time. But there is no "pattern and practice" exception to sovereign immunity. Therefore, because MSP is immune to suit and no exceptions apply, claims against MSP must be dismissed.

## CONCLUSION

The Court acknowledges that Mr. Alexander has had concerns about the issues raised in this lawsuit for close to two decades. He has brought several cases, including four in this court. His attorney has done his best to thoroughly investigate this matter and ensure that Mr. Alexander could once again have his day in court. The duty of the court is to look at all the facts alleged, apply the law, and determine if the case can move forward. Having thoroughly reviewed all the information

15

presented, as well as Mr. Alexander's previous cases, the Court concludes it cannot—Plaintiff's claims against Defendant Palmer are barred because he brought them once before, and his claims against MSP are barred because MSP cannot be sued.

For all the reasons set out in detail above, Defendant's Motion to Dismiss (ECF No. 7) is **GRANTED**, and this matter is **DISMISSED WITH PREJUDCE.**

**SO ORDERED**, this 31st day of March, 2021.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge